**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JILL HENNESSEY, Individually and<br>On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) No. 4:19-cv-01866-DDN |
| | ) |
| vs. | ) JURY TRIAL DEMANDED |
| | ) |
| KOHL'S CORPORATION and | ) |
| KOHL'S DEPARTMENT STORES, INC., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

**REDACTED**

i

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................. iii

I.  INTRODUCTION ............................................................................................................1

II.  RELIEF REQUESTED .....................................................................................................1

III. STATEMENT OF FACTS ................................................................................................2

   A.  Background .................................................................................................................2

   B.  Kohl's maintains uniform pricing guidelines that ensure hardly any products
      are offered or sold at their ticket price.......................................................................3

   C.  Hardly any product is offered or sold at its full price ...............................................5

IV.  LEGAL STANDARDS .....................................................................................................6

V.  ARGUMENT ....................................................................................................................7

   1.  Rule 23(a)(1):  Numerosity is satisfied ....................................................................7

   2.  Rule 23(a)(2):  Commonality is satisfied..................................................................7

   3.  Rule 23(a)(3):  Typicality is satisfied ......................................................................8

   4.  Rule 23(a)(4):  Adequacy is satisfied ......................................................................9

   5.  Rule 23(b)(3) is satisfied ..........................................................................................9

      a.  Common liability questions predominate ...........................................................9

      b.  Common damages questions predominate..........................................................13

      c.  A class action is the superior method for adjudicating this matter...............................14

   6.  Rule 23(b)(2) is satisfied for purposes of an injunction ....................................................15

VI.  CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ............................... 9

*Amgen Inc. v. Conn. Ret Plans & Tr. Funds,* 568 U.S. 455 (2013) .................................. 6, 13

*Amchm Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................... 9

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* 258 F.3d 578 (7th Cir. 2001) ............ 11, 12, 15

*Biben v. Card, No. 84-0844-CV-W-6,* 1986 WL 1199 (W.D. Mo. Jan. 6, 1986) .................... 7

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ........................................... 6

*Comcast Corp. v. Behrend*, 569 U.S. 29 (2013) ................................................. 13

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ................................... 7, 8

*Downing v. Riceland Foods, Inc.*,
No. 4:13CV321 CDP, 2015 WL 1299229 (E.D. Mo. Mar. 19, 2015) .................................. 12

*Glen v. Fairway Independent Mortg. Corp.*, 265 F.R.D. 474 (E.D. Mo. 2010) ...................... 9

*Golan v. Veritas Entertainment, LLC*,
No. 4:14CV00069 ERW, 2017 WL 193560 (E.D. Mo. Jan. 18, 2017) ............................ 6, 10

*Hopkins v. Kansas Teachers Community Credit* Union,
265 F.R.D. 483 (W.D. Mo. 2010) ............................................................... 14

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009) ................................. 13

*Huch v. Charter Comm., Inc.*, 290 S.W.3d 721 (Mo. 2009) ................................... 10

*Huffman v. Credit Union of Texas*, 758 F.3d 963 (8th Cir. 2014) ......................................... 10

*Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332 (S.D. Iowa 2013) ........................................... 12

*In re Dollar General Corp. Motor Oil Marketing and Sales Practices Litig.*,
MDL No. 2709, 2019 WL 1418292 (W.D. Mo. Mar. 21, 2019) ............................ 6, 7, 12, 13

*James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*,
275 F.R.D. 638 (M.D. Fla. 2011) ........................................................... 13

*Klapmeir v. Telecheck Intern., Inc.* 482 F.2d 247 (8th Cir. 1973) ....................... 14

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ........................................................ 12

*McAllister v. St. Louis Rams, LLC*, 2018 WL 1299553 (E.D. Mo. Mar. 13, 2018) ........... 9, 13

*Paxton v. Union Nat. Bank*, 688 F.2d 55 (8th Cir. 1982) ........................................................ 7

*Plubell v. Merck and Co., Inc.,* 289 S.W.3d 707  (Mo. App. 2009) ................................. 10, 13

*Russell v. Kohl's Dept. Stores, Inc.*,
No. ED CV 15-01143 RGK(SPx), 2015 WL 12748629 (C.D. Cal. Dec. 4, 2015) ............... 15

*Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992 (8th Cir. 2016) ....... 7

*Shechter v. Brewer*, 344 S.W.2d 784 (Mo. App. 1961) ......................................................... 13

*Spann v. J.C. Penney Corp.*, 307 F.R.D. 508 (C.D. Cal. 2015) ................................. 7, 8, 9, 11

*Tyson Foods, Inc. v. Bouaphakeo, 136 S.Ct. 1036 (2016)* ..................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 6, 7, 13

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... 1, 6, 7, 8, 14, 15

**Statutes and Regulations**

Missouri Merchandising Practices Act

15 CSR 60-7.010 ........................................................................................................ 10, 12

15 CSR 60-7.060 ........................................................................................................ 10, 12

# I        **INTRODUCTION**

If it's *always* on sale, is it *ever* on sale? Plaintiff Jill Hennessey ("Plaintiff") alleges Defendants Kohl's, Inc. (f/k/a Kohl's Department Stores, Inc.) and Kohl's Corporation (collectively "Defendants" or "Kohl's") have engaged in a years-long deceptive price-comparison scheme in violation of the Missouri Merchandising Practices Act ("MMPA"). Specifically, Kohl's compares "Regular" and "Original" prices (interchangeably, "ticket prices") with "sale" prices in order to create the illusion that its private and exclusive branded products can be bought for less than their fair market value. But the advertised ticket prices and sales are illusory because, at Kohl's, discounts are the norm and transactions at ticket price are the exception. Since Kohl's does not offer or sell items at the higher prices in substantial quantities, they are not worth the higher value represented on the ticket prices, and consumers do not get the bargain Kohl's promises them.

This case meets the requirements for class certification, as the core questions of liability and damages will turn on common evidence, including Kohl's companywide pricing policies and a mechanical analysis of its sales data showing **Kohl's only sells about ▮ of items at their full ticket price**. The class is numerous, and Plaintiff is an adequate representative. She is a victim of Kohl's deceptive scheme, she has retained experienced counsel, and her claims are materially indistinguishable from those of other Class Members. Given the relatively small damages for individual Class Members, a class action is the superior method for resolving this dispute.

# II       **RELIEF REQUESTED**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiff seeks certification of the following class (the "Class"):

> All persons who, while in the state of Missouri, and at any time between July 1, 2014 and the date of any judgment in this case (the "Class Period"), purchased from Kohl's (either at a Kohl's retail store or from its website) primarily for personal, family or household purposes, one or more Kohl's private or exclusive branded

1

items advertised with a "sale" or discounted" price that was 20% or more below an advertised "Original" or "Regular" price and who have not received a refund or credit for their purchase.

Excluded are items advertised with a "clearance" price, as well as transactions by Kohl's current and past officers, directors and employees.

## III   STATEMENT OF FACTS

### A. Background

Kohl's operates ██ retail stores in Missouri. Ex. 2 at 10:25-11:3.[1] Over the last three years, approximately 37%-42% of its sales were "proprietary brands that are available 'Only at Kohl's'" ("proprietary brands"). Ex. 1. These include Croft & Barrow, Sonoma, and Elle brands. *Id.*

Kohl's attaches "Regular" and "Original" price tags to its products.[2] Ticket prices also appear on graphics and electronic signs in stores, in print advertisements, on the Kohl's website and on receipts. Ex. 3 at 54:1-18. *See also* Ex. 12 (print advertisement). Ticket prices are intended to represent the "█████████████████████████████████████." Ex. 9 at KL00000706. *See also* Ex. 3 at 20:9-22:1 (ticket prices reflect the "███████████████████ ██████."); *id.* at 40:16-41:24 (███████████████████████████████████████████ ████); *id.* at 50:14-51:2 ██████████████████████████).

Kohl's compares ticket prices with lower "sale" prices. *E.g.*, Ex. 3 at 55:5-58:17; *see also id.* at 92:8-94:9 (price comparisons are made in a variety of places). This is to "████████████ ████████████████████████." Ex. 5 at KL00000193. *See generally* Ex. 7 at KL00000821 ("████████████████████████████████████████████████ . . .

---

[1] All references to exhibits herein ("Ex. _") are exhibits attached to the concurrently filed Declaration of Matthew J. Zevin in Support of Plaintiff's Motion for Class Certification.

[2] Kohl's refers to "Regular" and "Original" prices as ████████████████████████ █████████████████████████████████. *E.g.* Ex. 3 at 40:16-42:17. For consistency, Plaintiff generally refers to them herein as "ticket prices."



."); Ex. 3 at 88:24-91:25 (███████████████████████████████████████████). After the transaction, Kohl's provides a receipt emphasizing in large, bold print the total amount a consumer "saved" by buying items for less than their ticket price. Ex. 11. *See also* Ex. 16 (Response to Interrogatory No. 6) ("███████████████████████████████████████████████ ███████████████████████████████████.").

During the class period, Plaintiff Jill Hennessey purchased numerous proprietary branded items from Kohl's. *See* Ex. 11; Ex. 14 at 45:23-46:4; 118:19-119:20. She bought these items for personal and household use and because she thought she was "saving money" and "getting better deals" shopping at Kohl's. *Id.* at 63:9-17; 70:19-71:10. She "would look at the original price and feel like that was the value of the item and that the items at Kohl's had better value than at some of the other stores." *Id.* at 71:11-16; *see also id.* at 110:19-111:2 ("My motivation was I felt like I was getting a better value of the items at Kohl's."). She believed the ticket prices were "the regular price, the normal price that the item is worth." *Id.* at 74:5-8; *see also id.* at 74:9-17 (the ticket price is "the value of the item"). She now believes Kohl's deceived her because the ticket prices were fake, so she did not receive the value that Kohl's promised her. *Id.* at 174:4-18.

**B. Kohl's maintains uniform pricing guidelines that ensure hardly any products are offered or sold at their ticket price**

Kohl's senior management has instituted companywide "███████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████ Ex. 5 at KL00000192; *see also* Ex. 3 at 62:19-63:14; 67:1-13.[3] Kohl's ███████████████████████████████████████████████████████████████

_____

[3] ████████████████████████████████. Ex. 3 at 67:15-68:24.

█████████. Ex. 5 at KL00000192.[4]

███████████████. Ex. 3 at 112:22-115:11. Not one. Accordingly, ███████████

██████████████████████████. *Id.*; *see also id.* at 116:2-24.

Although the ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████ Ex. 5 at KL00000195-96.[5] *See also* Declaration of Stefan

Boedeker ("Boedeker Decl.") at ¶37, fn 22 (converting minimum offering days to percentages).

But these requirements are misleading. Establishing periods for non-seasonal items need not be

met on a ████████████████████████████████████████████

████████████████████████████████████" Ex. 5 at KL00000195. *See also* Ex. 8 at

KL00000914 ████████████████████████████████████████

████████████████████████."); Ex. 3 at 216:15-217:10 (same); Ex. 13

(Supplemental Response to Interrogatory 13) ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████"). In

short, Kohl's admits that ██████████████████████████████████████.

But even when products are allegedly offered at ticket price, that does not mean they will



---

[4] Buyers are "responsible for setting the ticket and sale prices of products within their category."
Ex. 15 (Amended Response to Interrogatory No. 3).

[5] ████████████████████████████████████████████████████████
████████████████████████████████ Ex. 5 at KL00000195-96.

actually sell at ticket price. For example, ███████████████████████████████

███████████████████████████████████████████. Ex. 5 at KL00000198;

Ex. 10 at KL00000893 (████████████████████); Ex. 3 at 163:24-165:1; *id.* at 166:10-

167:19. Kohl's also offers a broad array of coupons, "Kohl's Cash," and other "promotions and

incentives" that allow consumers to routinely buy items for much less than their ticket price. Ex.

6 at page ID 456-57; Ex. 3 at 153:24-156:7; *id.* at 186:13-20. In fact, ██████████████

██████████████████████ Ex. 3 at 252:2-19. These █████████████████████

████████████████████████████████████████████████████████

████████ Ex. 4 at 263:19-267:22.[6] As a result, even during those rare periods in which Kohl's

appears to offer products at their ticket price, the vast majority of transactions still occur at

discounted prices (Boedeker Decl. at ¶¶41-42), and *most* products are sold at prices below their

advertised "*sale*" price. *Id.* at ¶¶36-42. *See also* Ex. 6 (The "sale price at Kohl's is rarely the out-

the-door price that a Kohl's shopper actually pays. . . ."); Ex. 3 at 185:12-186:8 ████████

████████████████████████████████████████████████") (quoting

Ex. 6); *id.* at 188:2-9 ████████████████████████████.").

### C. Hardly any product is offered or sold at its full price

Plaintiff's economist has analyzed historical sales data for the 15 items identified in the

Complaint. His analysis confirms that several items were ██████████████████ and, when

analyzed collectively, ████████████████████████████. Boedeker Decl. at

¶¶28-33.  The highest percentage of units sold at full ticket price for any item was only ████. *Id.*

at ¶¶30-31. And, almost ████ of transactions involved a coupon, incentive or other discount. *Id.* at

¶¶38-40. Thus, even in those rare instances (i.e, ████ of all unit sales) when a product was

---

[6] █████████████████████████████████████████████████████

████████████████████████████████.

allegedly *offered* at its ticket price, more than ▮▮▮▮ of those allegedly "off-sale" units were sold at a price that was *less* than their full ticket price. *Id.* at ¶¶41-42.

## IV     LEGAL STANDARDS

Under Rule 23(a), a party must demonstrate: "(1) the class is so numerous joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Golan v. Veritas Entertainment, LLC*, No. 4:14CV00069 ERW, 2017 WL 193560, at *2 (E.D. Mo. Jan. 18, 2017) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)). Plaintiff must also show at least one subsection in Rule 23(b) is met. *Id.*

Here, Plaintiff relies on Rule 23(b)(3), which requires the Court find: (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Golan*, 2017 WL 193560 at *2 (citing *Blades v. Monsanto Co.*, 400 F3d 562, 566 (8th Cir. 2005)). Plaintiff also seeks certification under Rule 23(b)(2), which authorizes class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Under either analysis, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *In re Dollar General Corp. Motor Oil Marketing and Sales Practices Litig.*, MDL No. 2709, 2019 WL 1418292, at *11 (W.D. Mo. Mar. 21, 2019) ("*Dollar General*") (citing *Amgen Inc. v. Conn. Ret Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).

## V    ARGUMENT

### 1.    Rule 23(a)(1): Numerosity is satisfied

Rule 23(a) requires a class be so numerous, joinder of all members is impracticable. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982).[7] Kohl's operates ▪ stores in Missouri and has produced data for almost ▪ class member transactions during the Class Period. Boedeker Decl. at ¶¶15-25. Common sense dictates there are tens of thousands (if not more) class members, each with relatively small individual claims. *Biben v. Card*, No. 84-0844-CV-W-6, 1986 WL 1199 at *3, n7 (W.D. Mo. Jan. 6, 1986) (the Court can "make 'common sense assumptions'" to find numerosity) (citation omitted). Since it would be highly impracticable to join all these parties and try individual suits, numerosity is satisfied. *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 517 (C.D. Cal. 2015).

### 2.    Rule 23(a)(2): Commonality is satisfied.

Commonality is satisfied "when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *Dollar General*, 2019 WL 1418292, at *13 (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "Even a single [common] question will do." *Dukes*, 564 U.S. at 359 (alterations in original).

Here, as in *Spann*, Plaintiff contends Kohl's has engaged in a common "'scheme' that was rampant throughout [Missouri] as part of a massive, years-long, pervasive campaign and was consistent across all of [Kohl's] private branded and exclusive branded [products]." *Spann*, 307 F.R.D. at 518. This raises numerous common questions, including: (1) whether Kohl's had a bona

---

[7] The Eighth Circuit does not impose a separate threshold "ascertainability" requirement. *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 995-99 (8th Cir. 2016). Regardless, the proposed class definition is stated in objective terms, and Class Members can be identified through Kohl's extensive records pertaining to its customer loyalty program, as well as through the use of self-identification affidavits. *Dollar General*, 2019 WL 1418292, at *16.

fide intention to sell a reasonable quantity of products at their ticket price; (2) whether Kohl's made a reasonably substantial number of sales, or offered products for a reasonably substantial period of time at the ticket prices; (3) whether ticket prices overstate the value of Kohl's private and exclusive branded items; (4) whether Plaintiff and Class Members received the benefit of their bargain; and (5) whether Class Members are entitled to injunctive relief. *See* Dkt. 61, ¶64.

These common questions are susceptible to common proof, such as Kohl's companywide ██████████████ and policies concerning coupons, discounts and other incentives. Additional common proof will come from Plaintiff's economics expert, who will perform a mechanical analysis of Kohl's sales data (Boedeker Decl. at ¶¶35, 43 and 58); and from Plaintiff's consumer behavior expert, who can opine on the harmful effects deceptive price comparisons have on reasonable consumers. Declaration of Dhruv Grewal, Ph.D. ("Grewal Decl.") at ¶¶28-39 (reasonable consumers expect ticket prices to reflect an item's value based on prior sales). As in *Spann*, "[a]ll of the items at issue have similar key characteristics, including they are private and exclusive branded items, they have price tags that are intended to convey the [former price and fair market value], and when purchased, a receipt details the price paid and any purported savings." 307 F.R.D. at 518. "Because the claims of all prospective class members involve the same alleged misrepresentations related to items with these same common characteristics, they are susceptible to common proof sufficient to meet the commonality requirement of Rule 23(a)(2)." *Id.*

### 3. Rule 23(a)(3): Typicality is satisfied.

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). This "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the

same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

Plaintiff easily meets this requirement. Her claims share the same and essential characteristics of those of any Class Member, as they arise out of a common scheme based on Kohl's companywide pricing policies, and they will be resolved based on a common and mechanical analysis of evidence. Plaintiff's "claims are based on the same facts and the same legal and remedial theories as the claims of the rest of the class members." *Spann*, 307 F.R.D. at 519.

### 4. Rule 23(a)(4): Adequacy is satisfied.

The named plaintiff and her lawyers must fairly and adequately protect the interest of Class Members. Fed. R. Civ. P. 23(a)(4). This requires Plaintiff be a member of the Class, and that she and her counsel vigorously defend the interest of the Class. *Glen v. Fairway Independent Mortg. Corp.*, 265 F.R.D. 474, 478-79 (E.D. Mo. 2010).

Plaintiff is a member of the Class and understands her duty is to hire competent counsel, monitor the litigation, participate in discovery and testify at trial if necessary. Ex. 14 at 26:23-27:5. She already sat through a full-day deposition, produced documents and responded to interrogatories. She also hired counsel experienced in class action litigation, including successfully litigating cases based on deceptive pricing claims. Ex. 17. There can be no serious dispute they have the requisite "ability, resources, commitment, and experience necessary to conduct this class action." *McAllister v. St. Louis Rams, LLC*, 2018 WL 1299553, at *5 (E.D. Mo. Mar. 13, 2018).

### 5. Rule 23(b)(3) is satisfied

#### a.  Common liability questions predominate

Rule 23(b)(3) "tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation." *Amchm Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

"Predominance requires the Court to determine whether Defendant's liability to all plaintiffs may be established with common evidence . . . ." *Golan*, 2017 WL 193560 at \*3.

Predominance is easily satisfied under the MMPA. The MMPA's fundamental purpose is the protection of consumers, and, to promote that purpose, the act prohibits false, fraudulent or deceptive merchandising practices. *Huch v. Charter Comm., Inc.*, 290 S.W.3d 721, 724 (Mo. 2009) (en banc). "It is the defendant's conduct, not his intent, which determines whether a violation has occurred." *Id.* A class action lawsuit is authorized when the unlawful conduct has caused similar injury to "numerous other persons." *Id.* at 725 (quoting Section 407.025.2).

Plaintiff need not prove she or any Class Member relied on Kohl's deceptive price comparisons. *Huffman v. Credit Union of Texas*, 758 F.3d 963, 968 (8th Cir. 2014). Nor need she prove Kohl's deceptive conduct caused her or any class member to purchase its products. *Plubell v. Merck and Co., Inc.*, 289 S.W.3d 707, 714 (Mo. App. 2009) ("[A] plaintiff's *loss* should be a result of the defendant's unlawful practice, but the statute does not require that the *purchase* be caused by the unlawful practice.") (emphasis in original).

As relevant here, the MMPA defines a "regular price" as "a seller's usual and customary price." 15 CSR 60-7.010(L). It requires that:

> [a] seller shall not make a price comparison to a former price, unless the comparative price is *actual, bona fide and not illusory or fictitious*, and is- (1) A price at which *reasonably substantial sales* of the product were made to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in the immediate, recent period preceding the advertisement. . . . . [or] (2) A price at which the product was openly and actively *offered for sale* to the public by the seller in the regular course of the seller's business, and on a regular basis *during a reasonably substantial period of the time* in the immediate, recent period preceding the advertisement.

15 CSR 60-7.060(2)(B)(1-2) (emphasis added).

10

At trial, Plaintiff will rely on a common and mechanical analysis of historical transaction data to show Kohl's ticket prices are illusory, and not bona fide, because the percentage of units Kohl's actually sells at ticket price (i.e., ███████████ is not "substantial" as required by the MMPA. *See* Boedeker Decl. at ¶¶30-34. Plaintiff will also rely on Kohl's companywide policies to show it does not make bona fide offers to sell products at ticket prices for substantial periods of time. *Id.* at ¶¶36-43. She may also rely on internal profit margin targets and projection analysis to show Kohl's never had a good faith belief or intent to sell a substantial number of units at the ticket price. And she may rely on Professor Grewal to establish that false price comparisons are likely to deceive and influence consumers' purchasing decisions. Grewal Decl. at ¶¶34-39.

In *Spann*, the court was presented with nearly identical evidence and held a "jury may determine from such common proof that the [false price comparison] scheme was pervasive, and that defendant was or should have been aware that it would deceive customers." *Spann*, 307 F.R.D. at 520-522. Kohl's ██████████ and sales data "may show [it] had no bona fide intention of selling the subject products at their [ticket] prices." *Id.* at 522 (citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 258 F.3d 578, 579-80* (7th Cir. 2001) ("*Finlay*")). In short, evidence of a pervasive and unlawful price comparison "policy or scheme is common to all putative class members and predominates over any individual facts or questions." *Id.*

Kohl's pricing practices are remarkably similar to those of the defendant in *Finlay*, who regularly offered products at a discount, and only "once in a while" tried to sell items at higher prices. 258 F.3d at 579. The trial court concluded such practices were "unfair or deceptive" because less than 3% of unit sales occurred at the higher prices and "if a customer ask[ed] for [a] discount during regular-price days, Finlay [was] happy to oblige." *Id.* On appeal, the Seventh Circuit held:

> [w]ords such as 'unfair,' 'misleading,' and 'deceptive' understate the gravity of Finlay's misconduct. 'False' and 'fraudulent' are more accurate labels. The 'sale'

11

price is Finlay's regular price, so the claim that it offers a . . . *reduction* from some higher price is false. The district court found that Finlay lacks any bona fide intent to make transactions at the higher price, which justifies the appellation 'fraud.' If the FTC or the Attorney General of Illinois were to bring an action against Finlay, the court would issue an injunction in a trice."

*Finlay*, 258 F.3d at 580 (internal citations omitted, emphasis in original).

Because Kohl's engages in similar practices by which it sells an ███████████████ of units at their ticket prices (*e.g.,* ███), there is no reason a trier of fact could not conclude it engages in a similarly fraudulent scheme. *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332 (S.D. Iowa 2013) (unlawful pattern of racketeering could be established by common evidence of a challenged corporate policy) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1257 (11th Cir. 2004)).

Crucially, Plaintiff and the Class are entitled to a *presumption* that sales and offers were not reasonably substantial unless Kohl's can show either it: (1) *sold* ten percent (10%) or more of the total unit sales at the higher reference prices; or (2) openly and actively *offered* products for sale at the higher reference prices forty percent (40%) or more of the time immediately preceding an advertised discount. 15 CSR 60-7.060(2)(B)(1-2). Kohl's has not met that burden, and it apparently cannot adduce any evidence to do so. *See, e.g.* Ex. 2 at 128:21-129:13 (██████████ ███████████████████████); *id.* at 137:17-138:6 (████████████████ ████████████████████████). Thus, Plaintiff and the Class are entitled to a common, rebuttable presumption that Kohl's violated the MMPA. CSR 60-7.060(2)(B)(1-2).

The same common evidence can prove classwide unjust enrichment which requires: "(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit." *Downing v. Riceland Foods, Inc.*, No. 4:13CV321 CDP, 2015 WL 1299229, at *8 (E.D. Mo. Mar. 19, 2015) (citation omitted). Certification of this claim is appropriate because "the actions of the defendant are uniform and the transaction with all members are equitably similar." *Dollar General*,

2018 WL 1418292, at *19 (citing *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011) ("[W]hen the defendant's conduct is the same, it is difficult to conceive of any significant equitable differences between class members.")); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 570 (E.D. Mich. 2009) (a jury could conclude that the defendant was unjustly enriched no matter what the particular facts of each individual class member's transaction)); *McAllister*, 2018 WL 1299553, at *8 (the question of whether or not there was unjust enrichment can be decided "'in one stroke.'") (citing *Dukes*, 564 U.S. at 350).

### b.  Common damages questions predominate

Plaintiff must advance a theory of damages that matches her theory of liability and is "capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 29, 35 (2013). But she need not propose a "mechanism to identify [any] uninjured class members prior to judgment." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1049 (2016); *see also Dollar General*, 2019 WL 1418292, at *20 (Plaintiff is "not required to show that each class member will ultimately be entitled to these damages.") (citing *Amgen*, 568 U.S. at 459). Nor must she prove the exact amount of damages. "[A]ll that is required is that the evidence, with such certainty as the nature of the case will permit, shall lay a foundation which will enable the trier of the fact to make a fair and reasonable estimate." *Shechter v. Brewer*, 344 S.W.2d 784, 791 (Mo. App. 1961) (citing authority). Thus, "individual damages questions are not a bar to certification." *McAllister*, 2018 WL 1299553, at *9 (citing *Tyson*, 136 S.Ct. at 1045).

Here, Plaintiff and the Class are entitled to benefit-of-the-bargain damages. *Plubell*, 289 S.W.3d at 715. This measures the difference between the value of an item as represented minus the value actually received. Dkt. 50 at 600 (citing cases). This is a simple and common mathematical equation that can be calculated on either an individual or class-wide basis.

13

The first part of the equation is based on ticket prices, which are intended to represent the "fair market value" of an item. Boedeker Decl. at ¶¶45-46; *see also* Section III.A., *infra* ████ ████████████████████████████████████████ and Plaintiff understood the same).

The second part of the equation—the actual "fair market" value of each item—is determined by "the price at which a willing seller and a willing buyer will trade, both having a reasonable knowledge of the facts." *Klapmeir v. Telecheck Intern., Inc.* 482 F.2d 247, 252 (8th Cir. 1973) (citing cases). The most obvious source of this information is an analysis designed to capture the distribution of prices actually charged for the products in question. Boedeker at ¶¶47-51. For each product identified in the Complaint, Mr. Boedeker calculated actual value based on its mode (most common), median (middle) and mean (average) sales price. *Id.* Subtracting the actual market value from the represented value reveals that, with respect to the items identified in the Complaint, Plaintiff suffered damages of between ████████████ *Id.* at ¶¶53-55. Given appropriate additional sales data Mr. Boedeker can easily and mechanically do the same calculations for all products purchased by Plaintiff and the entire Class. *Id.* at ¶¶57-58.

### c.  A class action is the superior method for adjudicating this matter

The last requirement is that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority exists because Class Members have suffered relatively small damages and there are no other pending actions, making this a convenient forum for a single adjudication of class member claims. *Hopkins v. Kansas Teachers Community Credit* Union, 265 F.R.D. 483, 489-90 (W.D. Mo. 2010). Also, Kohl's maintains emails and transaction history for members of its loyal program, so class notice can be provided by a combination of emails and publication. Rule 23(c)(2).

14

6.  **Rule 23(b)(2) is satisfied for purposes of an injunction**

Plaintiff also seeks certification under Rule 23(b)(2). As another court framed the issue:

> This case typifies the kind of action properly certified under Rule 23(b)(2) insofar as Plaintiffs seek a single injunction prohibiting Defendant from further disseminating false price-comparison advertising schemes. If Plaintiffs can prove that Defendant engaged in a fraudulent price-comparison advertising scheme, then a single injunction prohibiting Defendant from continuing such misleading advertising practices would provide relief to all class members at once.

*Russell v. Kohl's Dept. Stores, Inc.*, No. ED CV 15-01143 RGK(SPx), 2015 WL 12748629, at *5 (C.D. Cal. Dec. 4, 2015) ("Plaintiffs' class is appropriately certified under Rule 23(b)(2) to the extent the class seeks injunctive relief."); *see also Finlay*, 258 F.3d at 580 (injunction is a suitable remedy for a fraudulent price comparison scheme). Here, Plaintiff similarly seeks a single injunction prohibiting Kohl's from continuing to violate the MMPA. Certification under Rule 23(b)(2) is therefore appropriate. *Id.*

VI   **CONCLUSION**

This case meets all of the requirements for certification of a damages class under Rule 23(b)(3) and an injunctive relief class under Rule 23(b)(2). Accordingly, Plaintiff's Motion should be granted.

BLITZ, BARDGETT & DEUTSCH, L.C.

By: /s/   Christopher O. Bauman
Robert D. Blitz #24387
Christopher O. Bauman #52480
120 South Central Ave., Suite 1500
St. Louis, Missouri 63105
314-863-1500 (office)
314-863-1877 (facsimile)
rblitz@bbdlc.com
cbauman@bbdlc.com

Matthew Zevin
Stanley Law Group
10021 Willow Creek Road, Suite 200
San Diego, California 92131
619- 235-5306 (office)
815-377-8419 (facsimile)
mzevin@aol.com

Scott A. Kitner
Stanley Law Group
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
214-443-4301 (office)

*Attorneys for Plaintiff and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/   Christopher O. Bauman
*Attorney for Plaintiff and Class*

17