**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JILL HENNESSEY, Individually and on Behalf of Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:19 CV 1866 DDN |
| KOHL'S CORPORATION and KOHL'S DEPARTMENT STORES, INC., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on (1) the motion of defendants Kohl's Corporation and Kohl's Department Stores, Inc., to deny class certification and strike class allegations (Doc. 65) and (2) the motion of plaintiff Jill Hennessey for class certification (Doc. 88). For the following reasons, defendants' motion is sustained, and plaintiff's motion is denied.

## BACKGROUND

Plaintiff Jill Hennessey has brought this action individually and on behalf of all others similarly situated, invoking diversity of citizenship subject matter jurisdiction granted by 28 U.S.C. § 1332.  Plaintiff alleges two claims under Missouri state law: (1) unlawful practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020(1) ("MMPA") and (2) unjust enrichment under Missouri common law.

In her Amended Complaint, plaintiff alleges the following facts. (Doc. 61.)  Kohl's markets its merchandise to the public by making false and misleading price comparisons in connection with the advertisement and sale of its private brand merchandise that is available "only at Kohl's" and its exclusive brands that are developed and marketed through agreements with nationally-recognized brands.  The false and misleading price comparisons appear on price tags affixed to items, on signs posted in Kohl's retail stores,

- 1 -

in print advertisements, in mailing circulars, and on Kohl's website Kohls.com.  Plaintiff alleges defendants represent that customers can buy Kohl's private and exclusive brand products "on sale" at a substantial discount from its advertised former prices, which defendants refer to as the "regular" or "original" prices.  In reality, the "sale" discounts are illusory, fictitious, and in violation of Missouri law, because the "regular" and "original" prices are not actual bona fide recent former prices of the products.  Defendant actually sells less than 5% of its private and exclusive branded products at regular or original prices. Additionally, defendant has not sold substantial quantities at the regular or original prices in the recent past, nor has it offered to sell merchandise for a reasonable and substantial period of time preceding the advertised "sale." (*Id*. at ¶24.)   At checkout, defendant perpetuates the deception by providing customers with a receipt that shows an item's original advertised item price, its lower sale price, and "the total amount the customer purportedly saved in the transaction." (*Id.* at ¶ 23.)

Plaintiff further alleges that defendant offers a constant array of promotions, such as storewide sales, "Kohl's Cash," coupons, and discounts associated with credit card sales, such that the actual selling price and related market value of each item is often less than the purported "sale price." Plaintiff alleges that customers who buy products at the advertised "sale price" are "likely" paying more than the actual fair market value of the item by more than what most people pay for the same item. (*Id*. at ¶ 25.) Additionally, through its use of fictitious regular and original former prices, Kohl's intentionally and/or negligently misrepresented and/or failed to disclose material information concerning the actual value of its products. (*Id*. at ¶ 27.)

Plaintiff alleges that defendant advertises former prices that "materially overstate the actual market value and worth" of the products. Because of this, customers like plaintiff and the class suffer damages because they do not receive items that have the value or worth that defendant represents the products have. (*Id*. at ¶ 26.) Plaintiff alleges that by concealing the true information, defendant intended to induce plaintiff and members of the class to purchase its products at prices they would not have otherwise agreed to pay. (*Id*. at ¶ 27.)

Plaintiff alleges that defendant knew or should have known that its price-comparison advertisements conveyed false information to consumers about the value of the merchandise it sells. Defendant knew or should have known that as the discount sizes increase, customers' perceptions of value and willingness to buy increase, while their intention to seek lower prices decreases. (*Id*. at ¶ 29.)

Plaintiff alleges she has been a frequent Kohl's shopper, both at its stores and online. She alleges that, after being exposed to and influenced by defendants' "price-comparison advertising scheme," she purchased numerous Kohl's private and exclusive branded products.  She alleges that she was misled as to the higher value of the products that Kohl's advertised and "did not receive products worth the amount that Kohl's represented she would receive through its false and misleading price-comparison advertising scheme." (*Id*. at ¶¶ 32, 33.)

Plaintiff's Amended Complaint provides examples of plaintiff's purchases with data that include location, dates, quantity, SKU number, item description, advertised former price, advertised sale price, additional discount, and price paid for these purchases.  (*Id*. at ¶¶ 34, 42, 49.)  These transactions occurred between September 5, 2016, and May 27, 2019. (*Id*.)  The complaint also includes historical sales data, produced by Kohl's, for each of the items plaintiff purchased, including total number of units sold, advertised "regular" or "original" price, number and percentage of units sold at "regular" or "original" price, total number of days offered, and number and percentage of days that units were sold at "regular" or "original" price.  (*Id*. at ¶¶ 37, 45, 52.)  The sales data also include the prevailing market price, measured by the most common or "mode" price, the average or "mean" price, and the 50th percentile or "median" price.  (*Id*. at ¶¶ 38, 46, 53.)

Plaintiff alleges that she and the proposed class were exposed to and were victims of defendant's false comparisons. As a result of the alleged practices, plaintiff and the class have not received the benefit-of-the-bargain, because the products they purchased do not have the higher value and worth that defendant represented through its false and misleading regular and original price comparisons. (*Id*. at ¶ 58.)

Plaintiff seeks certification of the following class:

- 3 -

> All persons who, while in the state of Missouri, and any time between the date that is five years immediately preceding the filing of this lawsuit and the date of any judgment in this case (the "Class Period"), purchased from Kohl's (either at a Kohl's retail store or from its website) for personal, family or household purposes one or more private or exclusive branded items advertised with a "Sale" price of 20% or more below a stated "Original" or "Regular" price and who have not received a refund or credit for their purchase(s).

(*Id.* at ¶ 60.)  "Excluded from the Class are Defendants, as well as their officers, directors, employees." (*Id.*)  Plaintiff seeks certification of this class under Fed. R. Civ. P. 23(a) and 23(b)(3), because the number of class members is so numerous that joinder would be impracticable; there are twelve questions of law and fact common to the members of the class; plaintiff's claim is typical of the claims of the other class members; plaintiff will fairly and adequately protect the interest of the class; plaintiff's counsel is experienced in this type of allegation; the prosecution of the claims by the members individually would foster inconsistent adjudication; and individual damages are insufficient to justify the cost of litigation. (Doc. 1 at 21-24.)

## DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION

In their motion to deny class certification, defendants argue that plaintiff, by creating online shopping and loyalty program accounts with defendants and accepting their terms and conditions, voluntarily waived her right to pursue a class action.  (Doc. 66 at 1.) Defendants contend that plaintiff entered into a contract with defendants and that her claims fall squarely within the scope of the contract.  Defendants further argue that the contract is valid and enforceable because the terms of the contract are neither procedurally nor substantively unconscionable.  Defendants argue that, as a result of her class action waiver, plaintiff cannot adequately represent any putative class.

On July 4, 2017, plaintiff simultaneously created an online account on defendants' website and enrolled in their Yes2You Rewards loyalty program.  (Doc. 66 at 1-2.)  On the "Create an Account" page, above where the customer inputs his or her name and email

address, the text states, "By creating an account, you agree to Kohl's <u>Security & Privacy Policy</u> and <u>Legal Notices</u>."  (Doc. 66-3 at 6.)  The underlined phrases hyperlink to the respective terms.  On the same page, under the Yes2You Rewards enrollment fields and above the "Save" button, the text states, "By enrolling in Yes2You Rewards, you are agreeing to the <u>Terms and Conditions</u> of the program and certify that you are over 13 years old."  (*Id*.)  The underlined phrase hyperlinks to the relevant terms.  Defendants' Legal Notices contain a section entitled "CLASS ACTION WAIVER:"

> TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, NO DISPUTE MAY BE JOINED WITH ANOTHER LAWSUIT OR WITH A DISPUTE OF ANY OTHER PERSON/CUSTOMER AND ALL PARTIES TO THE SUIT MUST BE INDIVIDUALLY NAMED. TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY DISPUTE TO BE LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR BASES INVOLVING A DISPUTE BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL ACTION), OTHER PERSONS/CUSTOMERS, OR OTHER PERSONS/CUSTOMERS SIMILARLY SITUATED.

(*Id*. at 10.)  Defendants' Terms and Conditions include a link in section XI(b) to their Legal Notices.  (Doc.  66-2 at 6).

The benefits of the loyalty program included (1) one point for every dollar spent, with 100 points equaling $5 in "Kohl's Cash;" (2) an annual birthday gift; and (3) additional special savings offers throughout the year.  (Doc. 66-2 at 3, ¶ 5.)  As a result of her enrollment in the loyalty program, plaintiff received at least $75 in Kohl's Cash rewards.  (*Id*. at ¶ 6.)  The benefits of creating an online shopping account included the ability to use express check-out, save billing and shipping information, and review pending and past online orders.  (Doc. 66-3 at 4,  ¶ 7.)

In their motion to deny class certification, defendants argue that plaintiff, by creating online shopping and rewards accounts with defendants and accepting their terms

and conditions, voluntarily waived her right to pursue class action. (*Id*. at 1.) Defendants contend that plaintiff entered into a contract with defendants and that her claims fall within the scope of the contract. (*Id*. at 6, 8.) Defendants further argue that the contract is valid and enforceable because the terms of the contract are neither procedurally nor substantively unconscionable. (*Id*. at 10.) Defendants argue that, as a result of her class action waiver, plaintiff cannot adequately represent any putative class. (*Id*. at 13.)

In response, plaintiff advances five arguments. First, plaintiff argues that defendants' motion is untimely, as defendants filed the instant motion six months after the scheduling order's February 28, 2020, deadline to file a motion for summary judgment regarding the plaintiff's ability to represent the class. (Doc. 72 at 3.) Plaintiff also argues that defendants failed to disclose the Legal Notices and witnesses in discovery. (*Id*. at 5.) Plaintiff contends that the Terms are not a valid agreement because they lack consideration and acceptance. (*Id*. at 7.) Further, plaintiff argues that the Legal Notices are unconscionable and therefore unenforceable. (*Id*. at 10.) Lastly, plaintiff argues that Kohl's has waived the Legal Notices by not seeking to enforce their provisions regarding venue and choice of law, as well as by proposing and agreeing to class discovery and a class certification briefing schedule. (*Id*. at 15.)

### A.    Contract Formation

Courts presented with the issue of the legal effect of online agreements "apply traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the online agreement." *Major v. McCallister*, 302 S.W.3d 227, 229 (Mo. Ct. App. 2009). Defendants' site was a "browsewrap," which is a site where users need not click to accept the terms, but the site indicates "in some fashion that use of the site constitutes acceptance of its terms." *Id*. at 230. The validity of a browsewrap agreement "depends on whether there is adequate notice to create actual or constructive knowledge of the website's terms and conditions." *Foster v. Walmart, Inc.*, No. 20-1787, 2021 WL 4697952 at *3 (8th Cir. Oct. 8, 2021).

Notice comes in two forms: actual notice and inquiry notice. Actual notice "occurs when the user is actually aware of the terms of use, most commonly after clicking on a

hyperlink and reviewing them." *Id*. Inquiry notice "depends on whether the website puts a reasonably prudent user on inquiry notice of the terms." *Id*. (quoting *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). "Critical is the website's overall design and content, including whether the existence of the relevant terms are reasonably conspicuous to the user." *Id*. Courts have refused to enforce browsewrap agreements where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the site, where users are unlikely to see it. *Nguyen* at 1177; *see also Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770, 793 (N.D. Ill. 2011). "On the other hand, where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable" to enforcing the agreements. *Id*. If the terms are reasonably conspicuous, "then the user is deemed to have notice of all facts that reasonable inquiry would disclose, including the terms themselves." *Foster* at *3.

The essential elements of any contract are offer, acceptance, and bargained for consideration. *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (en banc). "Consideration consists of either a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Id*.

Defendants contend, and plaintiff does not dispute, that plaintiff agreed to defendants' Legal Notices when she created an online account on defendants' website. However, plaintiff argues that she did not agree to the Legal Notices when she enrolled in the loyalty program. The disclosure in the loyalty program portion of the site states, "By enrolling in Yes2You Rewards, you are agreeing to the Terms and Conditions of the program and certify that you are over 13 years old." (Doc. 66-3 at 6.) Plaintiff contends that, in connection with her enrollment in the loyalty program, she did not have constructive knowledge of the Legal Notices because they were only viewable by clicking a hyperlink within the Terms and Conditions.

In the context of plaintiff's enrollment in the loyalty program, the Court concludes that plaintiff did not have constructive knowledge of the Legal Notices. The hyperlink to the Legal Notices is buried at the bottom of defendants' Terms and Conditions, in a

subsection of the last section, entitled "Additional Terms."  The multi-step process required to reach the Legal Notices from the text means that the even a reasonably prudent user is unlikely to see the content of the notices.

Though plaintiff did not have constructive knowledge of Legal Notices in connection with the loyalty program, plaintiff had constructive knowledge of the Legal Notices when she created her online account.  On the online account enrollment page, as it appeared when plaintiff created her account, the text notifying customers of defendants' Legal Notices is explicit.  The text regarding defendants' Legal Notices appears under the "Create an Account" heading and above the fields where a customer would input his or her personal information.  The font size of the notice is smaller than other text on the page, but not so small that the notice is inconspicuous.  Because the text notifying users of the Legal Notices is sufficiently conspicuous to constitute inquiry notice, plaintiff is deemed to have constructive knowledge, and the browsewrap agreement is valid.

In creating an online account, plaintiff received consideration.  Creating an online account on defendants' website benefited plaintiff by giving her the ability to use express check-out, save billing and shipping information, and review pending and past online orders.  The benefits that plaintiff received are sufficient to establish consideration supporting her agreement to defendants' Legal Notices.  Therefore, a valid contract existed between the parties.

## B.   Unconscionability

Defendants contend that the class action waiver is neither procedurally nor substantively unconscionable.  Defendants argue that the waiver is procedurally conscionable because the Legal Notices were conspicuously disclosed, and plaintiff's creation of an online account was not mandatory.  (Doc. 66 at 12.)  They contend that the waiver is substantively conscionable because plaintiff's rights can still be effectively vindicated by litigating her individual claims.  (*Id*. at 14.)

Plaintiff argues that the Legal Notices are substantively unconscionable because they require customers to agree exclusively to the application of Wisconsin law, eliminating rights under the MMPA.  (Doc. 72 at 17.)  They also exculpate defendants for

all claims based in tort, contracts, or statutes; they limit aggregate remedies to $10,000; and they require consumers to waive class actions.  (*Id.* at 17-18.)  Plaintiff contends that the Legal Notices are oppressively one-sided, citing the rights that defendants reserve while purporting to eliminate the rights of consumers.  (*Id.* at 18.)  Plaintiff also argues that the Legal Notices are procedurally unconscionable because they are an adhesion contract offered by a large company in a superior bargaining position, and the class waiver was buried in multiple pages of fine print.  (*Id.*)

In order to deem a contract unenforceable on the grounds of unconscionability, "a court applying Missouri law must find it both procedurally and substantively unconscionable."  *Cicle v. Chase Bank USA*, 583 F.3d 549, 554 (8th Cir. 2009).  The two types of unconscionability are balanced against one another, such that if there is gross procedural unconscionability, then there is not much substantive unconscionability needed, and vice versa.  *Id.*  "Procedural unconscionability in general is involved with the contract formation process, and focuses on high pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining position."  *Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300, 308 (Mo. Ct. App. 2005).  Substantive unconscionability means an undue harshness in the terms of the contract themselves.  *Id.*

> Missouri courts have described an unconscionable agreement as one in which no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other, or one where there is an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.

*Pleasants v. Am. Express Co.*, 541 F.3d 853, 857 (8th Cir. 2008) (quoting *Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo. Ct. App. 2003)).

### 1.   *Procedural Unconscionability*

Plaintiff argues that the Legal Notices are procedurally unconscionable because they are presented to the customer as an adhesion contract on a "take it or leave it" basis and are proffered by a large company that is in a superior bargaining position.  (Doc. 72 at 18.)

Plaintiff also contends that the class waiver is buried in multiple pages of fine print. (*Id*.) She argues that, based on the totality of the circumstances, the Legal Notices are difficult for the average consumer to understand and are therefore procedurally unconscionable. (*Id*.)

As the Eighth Circuit noted in *Cicle*, "these sorts of take-it-or-leave-it agreements between businesses and consumers are used all the time in today's business world." 583 F.3d 549, 555. Adhesion contracts are not inherently sinister and automatically unenforceable. *Swain v. Auto Services, Inc.*, 128 S.W.3d 103, 107 (Mo. Ct. App. 2003). The Court acknowledges that defendants are in a superior bargaining position, and plaintiff did not have the opportunity in the ordinary course to negotiate defendants' Legal Notices. However, plaintiff does not allege that defendants engaged in high-pressure sales tactics to induce plaintiff's agreement. Additionally, as discussed above, the Legal Notices were not so inconspicuous as to rise to the level of being procedurally unconscionable. While the text of the Legal Notices is small, the lines and sections are well spaced, and the text is legible. *See Woods v. QC Fin. Servs., Inc.*, 280 S.W.3d 90, 96 (Mo. Ct. App. 2008). Plaintiff is charged with inquiry notice of the Legal Notices because the hyperlink was reasonably conspicuous when she created her online account. Therefore, the Court finds that the agreement is not procedurally unconscionable.

### 2.   *Substantive Unconscionability*

Plaintiff argues that the Legal Notices are substantively unconscionable because they purport to eliminate consumers' rights under the MMPA by requiring them to agree exclusively to the application of Wisconsin law. (Doc. 72 at 17.) Plaintiff contends that the Legal Notices impermissibly exculpate defendants for claims based in tort, contracts, and statutes, and that the $10,000 damage cap removes the incentive to pursue claims against defendants because it includes attorneys' fees and punitive damages. (*Id*. at 17-18.) Plaintiff argues that the class action waiver further removes the incentive for attorneys to litigate consumers' claims against defendants due to economic infeasibility, providing the declaration of another consumer attorney in support of its contention. (Doc. 74.) Lastly, plaintiff contends that the Legal Notices are oppressively one-sided and totally

imbalanced because defendants purport to limit consumers' rights while retaining all rights for themselves.  (Doc. 72 at 17.)

### a.   Applicable Law and Limitation of Liability

The protections of the MMPA cannot be waived by contract.  *See Huch v. Charter Comm., Inc.*, 290 S.W.3d 721, 727 (Mo. 2009) (en banc); *High Life Sales Co. v. Brown-Forman Corp.*, 823 S.W.2d 493, 498 (Mo. 1992) (en banc).  As defendants point out, they have not sought to enforce the choice of law provision in this case.  To the extent that it is applicable, the choice of law provision in the agreement is unenforceable.

The "Limitation of Liability" section of the Legal Notices states that it "applies whether a claim is based in contract, negligence, statute or tort."  (Doc. 66, Ex. 3 at 9.)  It also includes a savings clause, stating that "if any part of this limitation of liability is determined to be unenforceable or invalid for any reason, [the consumer agrees] that the aggregate liability" of defendants shall not exceed $10,000.  (*Id.*)  As stated above, the MMPA cannot be waived by contract, so the limitation of liability is unenforceable as to the MMPA claims.

### b.   Class Waiver

Plaintiff cites *Woods* and *Whitney* in support of her argument that the class waiver is substantively unconscionable.  (Doc. 72 at 15-17.)  Both cases involved a challenge to an arbitration provision that contained a class action waiver.  In *Whitney*, the plaintiff challenged a telephone company's charging of a "Regulatory Cost Recovery Fee" as deceptive under the MMPA.  173 S.W.3d at 304.  The court determined that the arbitration provision with class action waiver was substantively unconscionable because it precluded incidental, consequential, punitive, or exemplary damages, as well as attorney's fees; prohibited class actions; and required the consumer to bear the costs of arbitration.  *Id.* at 311.  It emphasized that the requirement that the consumer bear the costs of arbitration limited consumers to a forum "where the expense of pursuing most claims . . . would far exceed the amount in controversy."  *Id.* at 313.  The court determined that the terms of the arbitration provision and the class action waiver, when taken together, effectively granted

- 11 -

the telephone company "immunity from claims related to improper billing where hundreds of dollars are not involved." *Id*. at 311.

*Woods* involved a challenge to a payday loan company's arbitration provision, which included a class action waiver. 280 S.W.3d at 92-93.  The Missouri Court of Appeals determined that the arbitration provision and class action waiver were both substantively and procedurally unconscionable.  *Id*. at 96, 98.  In reaching its holding regarding substantive unconscionability, the court noted that the company's customers were "forced by dire personal economic circumstances to patronize [the] business and incur interest rates of up to 400 percent." *Id*. at 97.  The court determined that the class action waiver would reduce the possibility of attracting competent counsel, despite the availability of attorney's fees and costs, leaving consumers with no meaningful avenue of redress through the courts. *Id*.  The court also noted that individualizing each claim in arbitration insulated the payday loan company from rulings with precedential effect, such as collateral estoppel, and disincentivized the company from avoiding the type of conduct that might lead to class action litigation in the first place. *Id*.

Conversely, the Eighth Circuit in *Pleasants* upheld a class action waiver within an arbitration provision.  In *Pleasants*, the plaintiff brought a class action against American Express, alleging that the company failed to make disclosures required by the Truth in Lending Act, and the company moved to compel the plaintiff to arbitrate her claim on an individual basis, pursuant to the arbitration provision and class waiver.  541 F.3d at 855. In upholding the agreement, the court emphasized that the arbitration clause allowed the plaintiff to "recover attorney's fees, costs, statutory damages (up to $2,000), and actual damages." *Id*. at 858.  It distinguished *Whitney*, wherein the Missouri Court of Appeals

> relied heavily on the concern that because the arbitration clause prohibited an award of attorney's fees or "any incidental, consequential, punitive, or exemplary damages," and because most of the disputes arising out of the contract would involve small dollar values, any "award could not possibly approach the amount that would have to be expended in arbitrating the action."

*Id*. at 858-59 (quoting *Whitney*, 173 S.W.3d at 313-14).  The Eighth Circuit determined that the plaintiff's total recovery of attorney's fees, costs, and statutory damages would likely exceed the costs of pursuing her claim; therefore, enforcement of the agreement would not lead to an unconscionable result.  *Id*. at 859.

The facts of the present case diverge from *Woods*, *Whitney*, and *Pleasants* in that the class action waiver is not contained within an arbitration provision.  However, the Court determines that similar considerations apply here: whether bringing an individual claim is economically feasible; whether attorneys' fees and costs are recoverable; and whether the waiver impermissibly insulates and disincentivizes defendants from avoiding the type of conduct that might lead to class action litigation in the first place.

Contrary to plaintiff's assertion, the Legal Notices do not include attorneys' fees in the $10,000 damage cap.  The Legal Notices limit defendants' liability for "any general, direct, indirect, incidental, special, consequential, exemplary or punitive damages." (Doc. 66, Ex. 3 at 9.)  As in *Pleasants*, plaintiff can recover attorneys' fees, costs, and actual damages in pursuing her claims.  541 F.3d at 859.  "The MMPA **allows** for class actions, but does not suggest that public policy favors class actions or that the wrongs sought to be remedied by the MMPA would continue unabated without the availability of class actions." *Cicle*, 583 F.3d at 556 (emphasis in original).  While the class waiver may discourage attorneys seeking to litigate via class action, it does not make all vindication of consumers' rights economically infeasible.  Enforcing the agreement as to the class action waiver, therefore, does not lead to economic infeasibility and an unconscionable result.

Additionally, the class action waiver does not impermissibly insulate defendants from liability.  In addition to actual and punitive damages, plaintiff seeks a permanent injunction restraining defendants from continuing their alleged violations of the MMPA. (Doc. 62 at ¶ 83.)  Neither the Legal Notices nor proceeding as an individual litigant rather than a class representative prevents plaintiff from seeking injunctive relief.  Therefore, the class action waiver at issue is not such an unfair agreement "as one in which no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other." *Pleasants*, 541 F.3d at 857.

c.    Mutuality

Plaintiff argues that the Legal Notices are oppressively one-sided because defendants reserved the right to seek all remedies available by law and in equity; sue in any court without any waiting period; seek complete indemnification from a consumer; update or modify its Legal Notices at any time; and recover the maximum damages permitted by law.  (Doc. 72 at 12-13; Doc. 66, Ex. 3 at 8-11.)  "Mutuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 433 (Mo. 2015).  Mutuality is satisfied if there is consideration as to the whole agreement.  *Id*. at 434; *see also State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859 (Mo. 2006) (en banc) ("As long as the requirement of consideration is met, mutuality of obligation is present, even if one party is more obligated than the other.")

As discussed above, there is consideration as to plaintiff's agreement to the Legal Notices.  In return for agreeing to defendants' Legal Notices, plaintiff received access to an online account and the ability to use express check-out, save billing and shipping information, and review pending and past online orders.  Even if plaintiff is "more obligated" than defendants, mutuality of contract is present because both parties are bound by the contract.  Therefore, plaintiff's argument that the contract is oppressively one-sided fails.

The Legal Notices bear "some indicia of both procedural and substantive unconscionability." *Sprague v. Household Intern.*, 473 F.Supp.2d 966, 977 (W.D. Mo. 2005).  However, the indicia of unconscionability in this case are not so strong as to render the agreement "one where there is an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Pleasants*, 541 F.3d at 857.  Plaintiff may still vindicate her rights under the MMPA as an individual litigant, and it is not economically infeasible for her to do so.  Therefore, the Court concludes that the Legal Notices are not unconscionable.

C.    **Enforceability**

- 14 -

Defendants argue that class action waivers, within or without an arbitration provision, are regularly enforced like any other contracts. (Doc. 66 at 10.) Plaintiff argues that all of the cases enforcing a class waiver outside of an arbitration clause are easily distinguishable from a consumer case, as they were in the contexts of maritime, employment, and commercial law. (Doc. 72 at 19.)

While "a vast majority of cases that address class action waivers do appear within the context of arbitration agreements, there is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in the context of any other contract." *Palmer v. Convergys Corp.*, 2012 WL 425256 at *2 (M.D. Ga. Feb. 9, 2012). Rather, they are to be analyzed and enforced like any other kind of contract provision. Additionally, the argument that other courts have upheld class action waivers in other contexts, though not yet in the consumer context, does not persuade the Court that the waiver is unenforceable in the present case. As discussed above, plaintiff entered into a valid contract with defendants, and the terms of the contract are not unconscionable. The Court therefore concludes that the class action waiver is enforceable.

### D.   Timeliness of Defendants' Motion

Plaintiff argues that defendants' motion is untimely because the December 4, 2019 Case Management Order (CMO) stated that defendants "may file a motion for summary judgment regarding the plaintiff's ability to represent the Class, no later than February 28, 2020." (Doc. 72 at 8; Doc. 37 at 2.) Defendants filed their motion to deny class certification and strike class allegations on September 23, 2020. (Doc. 66.) Plaintiff argues that she will suffer extreme prejudice if the motion is heard now due to the substantial time and expense already expended on the case. (Doc. 72 at 9-10.) Defendants argue that their motion is not untimely because the CMO permitted, but did not require, defendants to file a motion for summary judgment; that the Court's dismissal of the complaint on February 21, 2020 (Doc. 50) meant that there was not an operative complaint to challenge; and that the challenge to plaintiff's fitness as class representative is procedural, not substantive, so it could not be the subject of a motion for summary judgment. (Doc. 82 at 2-3.)

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  The Court "has broad discretion in establishing and enforcing the deadlines." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006).  "To establish good cause, a party must show its diligence in attempting to meet the progression order." *Id*.  The Court may also consider "the existence or degree of prejudice to the party opposing the modification." *Id*.  "On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling order." Fed. R. Civ. P. 16(f)(1).

The Court concludes that defendants established good cause for the timeliness of the motion at bar.  At the Rule 16 conference on November 19, 2019, defendants contemplated that their early summary judgment motion would discuss "any basis on which judgment could be entered as a matter of law." (Doc. 49 at 12.)  The Court issued the first CMO on December 4, 2019.  (Doc. 37.)  On December 11, 2019, the Court granted the first joint motion to amend the CMO, extending the deadline for plaintiff's motion for class certification.  (Doc. 40.)  On February 21, 2020, seven days before defendant's early summary judgment motion was due, the Court dismissed plaintiff's complaint.  (Doc. 50.)  The Court entered the second and third amended CMOs on April 2 and May 7, 2020, respectively; the third amended CMO extended the time for plaintiffs to file their motion for class certification to November 2, 2020, and for either party to file dispositive motions to April 2, 2021.  (Docs. 57, 59.)  Plaintiff filed her Amended Complaint on June 1, 2020, and defendants filed their motion to deny class certification and strike class allegations on September 23, 2020.  (Docs. 61, 66.)

As discovery continued and upon joint motions of the parties, the Court made several changes to the CMO.  Almost no deadline remained unchanged from the first CMO to the third amended CMO, including plaintiff's deadline for filing her motion for class certification.  Additionally, a week before defendants' early motion for summary judgment was due, the Court dismissed plaintiff's complaint, so there was no operative complaint to challenge.  Defendants filed the instant motion after plaintiff filed her Amended Complaint

but before she filed her motion to certify the class.  Therefore, the Court concludes that defendants were diligent in meeting the deadlines in the CMO, and their motion is timely.

The Court also concludes that plaintiff was not prejudiced by the timing of defendants' filing.  Plaintiff also sought and received extensions, including for her motion to certify the class.  The time and money that plaintiff has spent litigating this case will not go to waste, as plaintiff may move forward as an individual litigant.

### E.    Discovery Disclosure

Plaintiff argues that defendants violated Federal Rule of Civil Procedure 26(a) when it failed to disclose the Legal Notices and witnesses in its initial disclosures.  (Doc. 72 at 10.)  Plaintiff contends that defendants also violated Rule 34 by failing to produce the Legal Notices and exhibits in response to her document requests, and that defendants failed to designate its two witnesses in response to her Rule 30(b)(6) Notice of Deposition regarding affirmative defenses.  (*Id*. at 11.)  Defendants argue that they were not required to identify witnesses and documents under Rule 26 because the disclosure requirements focus on the merits of a party's claim.[1]  (Doc. 82 at 4.)

Rule 26 provides that

> [A] party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses  .  .  .  ; [and] (ii) **[]** all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses.

Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).  Rule 34 states that a party may request that another party produce and permit the requesting party to inspect any designated documents or electronically stored information.  Rule 30(b)(6) directs a party named as a deponent to designate persons to testify on its behalf.

---

[1] Defendants do not state specifically why the disclosures were not required under Rule 26(a).

Defendants do not address plaintiff's argument that they were required to produce the witnesses and documents because class waiver is one of their affirmative defenses. Rather, citing to the comments to the 1993 and 2000 amendments to Rule 26, defendants argue that they were not required to disclose the waiver because it is not relevant to the factual disputes or merits of plaintiff's claim, and the failure to disclose is therefore justified or harmless. However, they acknowledge that the 2000 amendments state that the "Committee intends that the parties and the court focus on the actual claims and defenses involved in the action." Fed. R. Civ. P. 26 advisory committee's note to 2000 Amendment. Defendants were required to disclose the Legal Notices and witnesses thereof because it is relevant to their Seventeenth Affirmative Defense. Defendants' failure to make the required disclosures makes them subject to sanctions.

Plaintiff argues that defendants failed to produce the Legal Notices in response to a request for all documents concerning plaintiff, including those "related to her participation or inclusion in a loyalty, membership or frequent shopper program." (Doc. 72 at 11; Doc 73, Ex. 3 at 8.) Defendants respond that they timely produced documents concerning plaintiff's loyalty program membership and online account. (Doc. 82 at 5.) However, as discussed above, defendants knew that plaintiff had agreed to the Legal Notices and that they intended to use the class action waiver as a defense. Defendants' failure to provide the Legal Notices in response to plaintiff's document request violates Rule 34 and makes defendants subject to sanctions.

Lastly, plaintiff argues that defendants failed to designate their two witnesses in response to a Rule 30(b)(6) notice of deposition regarding defendants' affirmative defenses. (Doc. 72 at 11.) Defendants contend that the notice involved almost 50 topics, that it was served only weeks before their motion to strike was filed, and that the parties were continuing to meet and confer regarding the notice at the time defendants filed their response. (Doc. 82 at 3, fn. 1.) Because the notice of deposition was the subject of continuing meet and confer efforts at the time the instant motion was being briefed, the Court concludes that defendants' alleged Rule 30(b)(6) violation was not ripe for review at the time that defendants' motion was filed.

### F.   Waiver of Legal Notices by Defendants

Plaintiff argues that defendants have waived enforcement of the Legal Notices by acquiescing to the venue and jurisdiction of the Court; proposing and agreeing to class discovery and a class certification schedule; and arguing that Missouri law, rather than Wisconsin law, applies.  (Doc. 72 at 20.)  Defendants respond that they have provided clear and repeated notice of their intent to enforce the waiver.  (Doc. 82 at 6.)

The Court finds plaintiff's waiver argument unconvincing.  Defendants can choose to enforce all, some, or none of their rights under the contract.  Failure to assert some of their rights does not constitute a waiver of the entire agreement.  Therefore, the Court concludes that defendants did not waive enforcement of the Legal Notices.

### G.   Sanctions

Fed. R. Civ. P. 37(c)(1) provides that, "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  In addition to or instead of this sanction, the court may, on motion and after giving an opportunity to be heard, "order payment of the reasonable expenses, including attorney's fees, caused by the failure," "inform the jury of the party's failure," or impose other appropriate sanctions.  Fed. R. Civ. P. 37(c)(1)(A)-(C).  The Court has "wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case," and it may "exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless."  *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008.)  When fashioning the remedy, the Court should consider, "*inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony."  *Id.*  The Court's "discretion narrows as the severity of the sanction or remedy it elects increases."  *Id.*

The Court concludes that defendants' failure to provide the Legal Notices in discovery was not substantially justified or harmless.  As plaintiff argues and defendants

fail to rebut, the class action waiver contained in the Legal Notices is an element of an affirmative defense, and defendants should have provided the Legal Notices during initial disclosures and upon plaintiff's Rule 34 document request.  Similarly, the failure to disclose the Legal Notices was not harmless.  Plaintiff continued to conduct discovery without a key document upon which defendants seek to rely.

Defendants' stated reason for noncompliance with Rules 26(a) and 34 is that they were not required to disclose the Legal Notices.  (Doc. 82 at 4.)  Defendants argue that plaintiff does not suffer from surprise and prejudice because defendants repeatedly gave plaintiff notice regarding the class action waiver, and plaintiff's counsel previously moved to strike defendants' class action waiver in another case.  (*Id*. at 8.)  Defendants contend that plaintiff is not prejudiced because she made no effort to conduct any discovery regarding the class waiver issue once defendants notified her of the Legal Notices.  (*Id*.)

Defendants have not offered support for their contention that they were not required to produce the Legal Notices during initial discovery or subsequent document requests, so there is not good reason in the record for their noncompliance.  However, defendants have advanced an argument for lack of surprise and prejudice to plaintiff.  Plaintiff's counsel has encountered defendants' class action waiver in a past case, and defendants similarly asserted an affirmative defense of the basis of the waiver.  *Chowning v. Kohl's Dep't Stores, Inc*., 2:15-cv-08673-RGK-SP (C.D. Cal.).  The late revelation of the class action waiver did not and will not affect the order and efficiency of subsequent proceedings, including the trial, as the Court had not yet certified the class and discovery is ongoing.  Lastly, the Legal Notices and defendants' invoking of the class action waiver are crucial pieces of information in their argument against class certification.

Having taken into consideration the above factors, the Court concludes that the appropriate sanction for defendants' failure to provide the Legal Notices in their initial disclosures and in subsequent document requests does not include exclusion of the class action waiver.  While defendants offer no persuasive justification for their failure to provide the Legal Notices, the other factors weigh against exclusion.  As shown by defendants' assertion of the class action waiver in this case and previous cases, the waiver

is an important affirmative defense.  Plaintiff cannot claim surprise and prejudice for the late revelation, as plaintiff's counsel has encountered defendants' class action waiver in a past case when defendants similarly asserted it as an affirmative defense.  Additionally, defendants repeatedly gave plaintiff notice of the class action waiver through both correspondence between counsel and defendants' assertion of the affirmative defense in its answer.  Lastly, the late revelation of the class action waiver will not affect the order and efficiency of future proceedings, as the Court had not yet certified the class and discovery is ongoing.  Therefore, the Court will not exclude the class action waiver.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of defendants to deny class certification and to strike class allegations **(Doc. 65) is sustained.**

**IT IS FURTHER ORDERED** that the motion of plaintiff for class certification **(Doc. 88) is denied.**

**IT IS FURTHER ORDERED** that the motion of defendants for leave to submit supplemental authority **(Doc. 159) is denied as moot.**


_____
     /s/   **David D. Noce**
**UNITED STATES MAGISTRATE JUDGE**

Signed on November 19, 2021.